# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1304V

| | |
|---|---|
| LISA OSTELLINO,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 16, 2025 |

*Jonathan Joseph Svitak*, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT**[1]

On September 15, 2022, Petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim – that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on October 4, 2021. *Id.* The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

A disputed fact issue has arisen regarding whether Petitioner's injury meets the Act's "severity requirement" - but as discussed below, I find it more likely than not that Petitioner can establish this claim element.

---

[1] Because this fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.  **Relevant Procedural History**

In August 2024, Respondent stated he had completed the medical review of this matter and would defend the claim. ECF No. 29. Respondent thereafter filed a Rule 4(c) Report (ECF No. 31), contending in it that Petitioner has not established that she suffered her alleged SIRVA for more than six months post-vaccination (i.e., through at least April 4, 2022). *Id.* at 6. That issue is ripe for consideration.[3]

II. **Relevant Authority**

Pursuant to Section 13(a)(1)(A) of the Vaccine Act, a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of*

---

[3] Because Respondent contends that the six-month severity issue is dispositive in this case, he did not address the relative merits of the Table claim in other respects (but requested the opportunity to do if necessary). Respondent's Report at 2, n.1. Petitioner has objected to Respondent's failure to provide a Rule 4(c) Report setting forth all of his arguments in objection to compensation, maintaining that this will result in "piecemeal" litigation. ECF No. 32.

*Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed, or varied, by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.     Finding of Fact Regarding Severity

I make this finding of fact after a complete review of the record to include all medical records, affidavits, and additional evidence filed, and in particular the following:[4]

- Petitioner received the flu vaccine in her right deltoid on October 4, 2021. Ex. 2 at 4-5.

- On October 26, 2021 (22 days post vaccination), Petitioner saw a treater at her primary care provider ("PCP")'s office complaining of "pain in injection site (from flu shot)." Ex. 3 at 20. Specifically, Petitioner reported that she

---

[4] While I have reviewed all the evidence filed to-date in this case, only evidence related to severity will be discussed herein, though other facts may be provided as necessary.

received a flu shot in the right arm on October 4, 2021, and "[s]ince that day she has had pain the right arm with weakness, pain radiating down towards the elbow, a sense that her right hand is not as dexterous as it was, and pain in the right shoulder especially in the deltoid." *Id.* Her right shoulder was also still "a little warm to the touch." *Id.*

- An examination of Petitioner's right shoulder showed intact sensation, strong grip strength, but pain with testing and with passive range of motion ("ROM"). Ex. 3 at 22. Petitioner was diagnosed with SIRVA, and the treater noted "[t]here may be some bursitis . . . tendinitis . . . muscle inflammation. Possibly some nerve injury[,]" and that the treater would defer to orthopedics as "maybe [his] diagnosis is incorrect and this may simply be a bursitis or tendinitis." *Id.* at 20.

- On November 17, 2021, Petitioner had a visit with an orthopedist for right shoulder pain. Ex. 4 at 4. Petitioner reported that she received a vaccine in her right shoulder on October 4, 2021. *Id.* She described the pain as being in "the lateral arm which radiates into the forearm." *Id.* Petitioner also reported "limited ROM and night time [sic] pain" and that she dropped things with her right hand. *Id.* An examination was consistent with tenderness, slightly reduced strength, limited active and passive ROM, and positive impingement signs. *Id.* The orthopedist diagnosed Petitioner with adhesive capsulitis, and an MRI was ordered, along with a recommendation for physical therapy ("PT") and a steroid injection. *Id.* at 4-5.

- Petitioner began PT on November 30, 2021. Ex. 5 at 5. She reported that her right shoulder pain "began in the beginning of October after receiving her flu shot. Since then [she] has had increased pain and decreased motion of her R [sic] shoulder." *Id.* She rated her pain at a 5/10 on "average" and noted that it "increases with movement over head [sic] to >8/10." *Id.* Petitioner described her pain as "usually constant and achy at rest, sharp with movement." *Id.* She exhibited tenderness to palpation in the middle of the right deltoid "where she got the shot," decreased active and passive ROM, decreased strength, abnormal posture, and decreased functional mobility. *Id.* at 5-6.

- Petitioner saw another treater at her PCP's office on December 8, 2021. Ex. 6 at 6. Petitioner reported that "after receiving a vaccination she has been unable to take her arm through the full range and it is painful." *Id.* Petitioner

4

received a steroid injection via ultrasound, during which the treater observed an "intrasubstance supraspinatus tear." *Id.* at 6-8.

- During a January 5, 2022 orthopedic follow up visit, Petitioner reported that her steroid injection "helped but [she was] still having some soreness." Ex. 4 at 7. An examination showed "moderate swelling," reduced strength, limited active and passive ROM, and positive impingement signs. *Id.* The orthopedist maintained his assessment of adhesive capsulitis and noted that Petitioner "continues to have decreased [ROM] which is frustrating to [Petitioner]." *Id.* The treater also noted that Petitioner had "been making small gains with the help of [PT]." *Id.*

- On January 20, 2022, Petitioner returned to her PCP's office and reported an "at least 50% improvement in pain and increased [ROM] status post intra-articular steroid injection." Ex. 6 at 3. Despite this improvement, Petitioner reported that she still "does not have full [ROM]." *Id.* An examination showed decreased active ROM and slightly diminished strength. *Id.* at 5.

- During Petitioner's 13th PT session on March 1, 2022, Petitioner noted that her pain levels "ha[d] decreased" but that she "still ha[d] fatigue with daily activities and work." Ex. 5 at 18. The treater wrote that Petitioner's passive ROM was "full today[]" and her active ROM was within normal limits. *Id.*

- Petitioner followed up with her orthopedist on March 17, 2022, and noted that she "feels like she has remained the same" (since her last orthopedic visit on January 5, 2022). Ex. 4 at 9. Petitioner stated "that she has been experiencing pain, soreness, stiffness, and weakness." *Id.* She also reported feeling like PT had "not helped." *Id.* Upon examination, Petitioner exhibited moderate swelling, diminished strength (4/5 of the supraspinatus), positive impingement signs, and limited active ROM with forward flexion, abduction, internal and external rotation, but full passive ROM. *Id.*

- The orthopedist assessed Petitioner with an "unspecified injury of muscles and tendons of the rotator cuff of right shoulder." Ex. 4 at 9. The treater's assessment contained an entry that Petitioner "continue[d] to have pain and difficulty with her [ROM] especially above her shoulder. However, her passive [ROM] has improved significantly." *Id.* at 10. The orthopedist felt that "the source of [Petitioner's] pain is likely coming from her rotator cuff and cannot rule out a small rotator cuff tear at this time." *Id.* The orthopedist administered Petitioner another steroid injection in the right shoulder "to see

if that will relieve last bit of pain and discomfort that she is having." *Id.* If the steroid injection was unsuccessful, the orthopedist and Petitioner would consider additional treatment, including an MRI under anesthesia. *Id.*

- Petitioner attended her 15th and final PT session on March 22, 2022. Ex. 5 at 20. She reported that she was "sore today" and had received a steroid injection. *Id.* The treater noted that Petitioner had full passive ROM and "[n]o increase in pain" with her PT exercises. *Id.* However, Petitioner "continue[d] to have scapular winging." *Id.* The physical therapist recommended Petitioner "[c]ontinue with [rotator cuff] and periscapular strengthening to improve mobility/functional mobility (to be able to paint and teach her art classes w/o pain)." *Id.*

- Petitioner did not seek care *specifically* for right shoulder related complaints thereafter – despite several medical treatment visits throughout 2023, including at least one to her PCP's office (on January 24, 2023). *See* Ex. 3 at 3-6; *see also* Ex. 8 at 3-32.

- On June 2, 2023, Petitioner received bilateral trigger point injections and occipital nerve blocks for an "indication" of "chronic cervical spasm with cervicogenic head pain and shoulder spasm." Ex. 8 at 25. The affected shoulder was not further specified. *Id.*

- It was not until 2024 that Petitioner again – almost *two years* from the last shoulder-specific treatment - mentioned any issues specific to the right shoulder. On January 2, 2024, during a visit with a neurosurgeon, Petitioner complained of neck pain "as well as paresthesias into her upper extremity." Ex. 9 at 6. She reported "fatiguing of her right shoulder when it is in an abducted position. She feels it is weaker" and "there is an ache in her right arm" that she notices when she paints. *Id.* An examination showed "mild 4/5 weakness of the right deltoid." *Id.* The neurosurgeon diagnosed Petitioner with cervical stenosis of the spinal canal, neck pain, and paresthesias. *Id.*

- By February 21, 2024, Petitioner's right shoulder pain had "improved," and (upon review of a recent EMG) the neurosurgeon diagnosed Petitioner with mild bilateral carpal tunnel syndrome and noted that the spinal stenosis "is likely asymptomatic and incidental." Ex. 9 at 3. No additional medical records have been filed.

- In her declaration, authored on February 10, 2023, Petitioner attests that at the time of her last PT visit on March 22, 2022, she "was still experiencing pain, stiffness, and weakness in [her] right shoulder." Ex. 1 ¶ 15. However, she notes that her recent injection "provided some temporary relief" and she "decided that [she] would perform the exercises [she] learned during the last four months of [PT] at home." *Id.* Petitioner explains that she "still perform[s] the exercises [she] learned in [PT] on a daily basis." *Id.* ¶ 16. She attests that her pain, stiffness, and loss of ROM has persisted since the time of that visit until "now" (the date she authored her declaration). *Id.*

## ANALYSIS

The Vaccine Act requires that a Petitioner demonstrate that "residual effects or complications" of a vaccine related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). To satisfy the six-month requirement, "[a] potential petitioner must do something more than merely submit a petition and an affidavit parroting the words of the statute." *Faup v. Sec'y of Health & Hum. Servs.,* No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015). Rather, a petitioner is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months[.]" *Id.*

Additionally, "the fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Hum. Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Hum. Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (finding that a petitioner suffered from residual symptoms that due to their mild nature did not require medical care and thus that "a discharge from medical care does not necessarily indicate there are no residual effects"). In another SPU case, where a petitioner's last treatment was at five months and nine days, the petitioner was found to meet the six-month requirement. *Schafer v. Sec'y of Health & Hum. Servs.,* No. 16-0593V, 2019 WL 5849524 (Fed. Cl. Spec. Mstr. Aug. 28, 2019). In that case, based on the petitioner's symptomology and progression, the special master noted that it was unlikely "that petitioner's shoulder symptoms would have resolved within [the next] 22 days." *Id.* at *7.

In this case, there appears to be no dispute that Petitioner received the flu vaccine on October 4, 2021, and a cursory review of the record tends to show that the onset of her post-vaccination shoulder symptoms occurred within 48 hours of the subject

7

vaccination. *See,* e.g., Ex. 3 at 20. She therefore must demonstrate by preponderant evidence that her residual symptoms continued for more than six months thereafter from onset, or through April 4, 2022. *See,* e.g., *Herren,* 2014 WL 3889070, at *3.

The record shows that Petitioner last received treatment for her shoulder pain approximately five months and 18 days post vaccination (on March 22, 2022). Ex. 5 at 20. And Respondent argues that Petitioner's 2023 and 2024 complaints of right shoulder symptoms "did not emerge until over a year after [her] last report of treatment for her right shoulder injury, and appear to be neuropathic, not musculoskeletal, in origin." Rule 4(c) Report at 6-7 (citing Ex. 8 at 14; Ex. 9 at 3, 6, 10). Respondent thus contends that these later complaints are "not part of" the same injury for which Petitioner was treated from October 2021 through March 2022. *Id.* at 7.

The medical record establishes, however, that on March 22, 2022 (merely 13 days shy of the severity "cut-off"), Petitioner was still experiencing shoulder pain and "scapular winging" - to the point that the physical therapist recommended continued strengthening exercises to "improve mobility/functional mobility (to be able to paint and teach her art classes w/o pain)." Ex. 5 at 20. More so, just five days prior to this visit (on her last orthopedic follow up on March 17th), Petitioner reported feeling "pain, soreness, stiffness, and weakness" and she demonstrated diminished active ROM on examination. Ex. 4 at 9. Because of these ongoing symptoms, the orthopedist administered Petitioner a repeat steroid injection "to see if that will relieve [the] last bit of pain and discomfort that she is having." *Id.* at 10. The orthopedist also suggested a course of treatment if the steroid injection was ultimately unsuccessful. *Id.*

These record notations, with receipt of a steroid injection and a proposed continued treatment course, provide evidence that Petitioner's injury was at this point likely ongoing, and that her treater did not predict that the injury was likely to resolve soon thereafter – let alone within the next 13 *days. See,* e.g., *Schafer,* 2019 WL 5849524, at *7.

I also do not construe Petitioner's decision not to return for treatment directly related to her right shoulder after March 2022 as evidence that her injury had resolved by that time. Rather, Petitioner's treatment cessation has a reasonable explanation (that she experienced some temporary relief from her March 17th steroid injection, and she continued performing at-home PT exercises on a "daily basis" through early 2023). *See* Ex. 1 ¶¶ 15-16. This, paired with Petitioner's reports of ongoing symptoms so close-in-time to the six-month "cut-off," support that Petitioner's alleged SIRVA had not likely resolved fully by early April.

Compared to other SIRVA injuries, however, Petitioner's right shoulder pain and limited ROM was not especially severe, even at the time she did obtain treatment. And

significantly, she did not seek follow up care for her right shoulder after March 2022. Indeed, as Respondent accurately argues, Petitioner's 2023 and 2024 reports[5] pertaining to the shoulder appear too attenuated to be persuasively connected to Petitioner's original alleged right shoulder vaccine-related injury. Petitioner herself did not link her right shoulder symptoms (in January 2024) to the subject vaccination, and her later symptoms ultimately received a separate neurological, non-musculoskeletal diagnosis (pertaining to the cervical spine[6] and/or were considered to be related to carpal tunnel syndrome). *See,* e.g., Ex. 8 at 14, 25; Ex. 9 at 3, 6, 10. All of this speaks to the obvious mildness of Petitioner's symptoms[7] – but that is a matter that goes to the ultimate quantum of damages to be paid, rather than whether the claim's temporal severity has been established.

## Conclusion and Scheduling Order

Respondent's Rule 4(c) Report purported to reserve analysis of Petitioner's Table claim and any potential causation-in-fact claim until Petitioner cured the alleged statutory severity defect. However, Vaccine Rule 4(c) requires that Respondent's Report set forth "a full and complete statement of its position as to why an award should or should not be granted," and states that it "must contain [R]espondent's medical analysis of [P]etitioner's claims and must present any legal arguments that [R]espondent may have in opposition to the petition."

Thus, the Vaccine Rules do not contemplate Respondent raising piecemeal objections to compensation, reserving additional issues for later.[8] *See,* e.g., *Coombes v. Sec'y of Health & Hum. Servs.,* No. 21-1750V, 2024 WL 4625130, at *7 (Fed. Cl. Spec. Mstr. Sept. 24, 2024). Instead, Respondent's report should have set forth his medical analysis and a full and complete statement of his position and any arguments he wished to raise in opposition to the petition. I will afford Respondent the chance to show cause why I should not find that the SIRVA QAI criteria and other requirements for entitlement are satisfied and enter a ruling on entitlement in Petitioner's favor.

---

[5] Respondent refers to Petitioner's "shoulder spasms and right arm fatigue in 2023 and 2024." *See* Rule 4(c) Report at 6-7; *see also* Ex. 8 at 25; Ex. 9 at 6.

[6] During a December 11, 2023 neurology visit, Petitioner's neurologist noted that her brain and cervical spine MRIs showed severe cervical radiculopathy and moderate cervical stenosis. Ex. 8 at 14-15.

[7] For this reason, Petitioner should not expect to receive any damages for treatment obtained after March 2022, and should also anticipate a modest pain and suffering award.

[8] Only if Respondent noted some preliminary, almost-jurisdictional objection to a claim – for example, whether the claim involved a covered vaccine – might proper circumstances exist to defer addressing the claim's merits (although in such circumstances Respondent would be better served simply by filing a motion to dismiss on those narrow grounds alone).

Accordingly, based on my review of the record as a whole, I find that the statutory severity requirement is satisfied by preponderant evidence.

Respondent is hereby **ORDERED** to Show Cause **by Thursday, July 31, 2025,** why a ruling on entitlement in Petitioner's favor should not be issued.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master